Brett E. Lewis, Esq. (BL-6812)
Justin Mercer, Esq. (JM-1954)
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
brett@ilawco.com
justin@ilawco.com

*Counsel for Defendant Michael Gargiulo*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COOLMATH.COM, LLC and<br><br>    Plaintiff,<br><br>-v-<br><br>COOLMATHGAMES.COM,<br>MICHAEL GARGIULO and<br>JOHN DOE<br><br>    Defendants. | 14-cv-4291(LK)(SN) |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Defendant Michael Gargiulo ("Mr. Gargiulo"), by his attorneys, Lewis & Lin LLC, hereby submits this Memorandum of Law in opposition to Plaintiff's Application for an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order ("Application").

### INTRODUCTION

Plaintiff's Application fails to establish that Plaintiff is entitled to the extraordinary relief it seeks. Indeed, a number of Plaintiff's key allegations are unfounded and warrant dismissal. As a threshold matter, Plaintiff's Application and Complaint rest upon baseless, conclusory and, sometimes, false statements regarding Defendant's alleged contacts with New York. Mr.

1

Gargiulo is not a resident of the State of New York. Plaintiff posits absolutely no *evidence* that Mr. Gargiulo owns, operates or is individually responsible for any content on the www.coolmathgames.com Web site. Thus, Plaintiff has failed to allege any facts that would support a *prima facie* showing of personal jurisdiction over an out-of-state Defendant.

<u>Second</u>, the Complaint fails to allege sufficient facts to establish that it has a protectable mark in the phrase "coolmath-games," or "cool math games," which is so widely used on the Internet in connection with Web sites featuring a certain type of flash game, as to be generic. Defendants are also willing to change the look and feel of the CoolMathGames.com site (the "Disputed Site") and adopt disclaimers to avoid any confusion, rendering an injunction unnecessary. Nor has Plaintiff come close to satisfying the threshold for establishing protectable trade dress in the colors of its websites.

<u>Third</u>, Plaintiff has failed to establish that it is likely to suffer *irreparable* injury from the continuing use of the Disputed Site. Both sites feature the same types of flash games, commonly associated with the term "cool math games." Any alleged injury can be compensated by monetary damages. Moreover, the Subject Domain was registered in 2001, long before Plaintiff registered the <CoolMath-Games.com> domain name and before Plaintiff owned a trademark registration for any of its alleged marks. The Subject Domain has been in use in connection with the marketing and promotion of math-oriented flash games for roughly <u>13 years</u>, and was in use for <u>4 months</u> after Defendants launched the CoolMathGames.com Web site (the "Disputed Site") before Plaintiff brought this action. Plaintiff failed to take any action with respect to the Subject Domain until now. A Aron LLC, the licensee of the Subject Domain, relied to its detriment on Plaintiff's silence and implicit consent to such use of the Subject Domain, in licensing the

Subject Domain for use in connection with "cool math games."  *See* Affidavit of Michael Gargiulo ("Gargiulo Aff.") at ¶ 24.

As such, Defendants respectfully submit that the Court should deny the preliminary injunction.

## FACTUAL BACKGROUND[1]

On June 13, 2014, Plaintiff Coolmath.com, LLC ("Plaintiff") filed a five-count complaint against three parties, "Coolmathgames.com," Mr. Gargiulo, and "John Doe." (Doc. 2).  The Complaint asserted claims against <u>all</u> defendants sounding in trademark infringement, unfair competition, false designation of origin, trade dress infringement, and violation of the New York GBL § 349 (the "Complaint") concerning the operation of a website located at the domain name <www.coolmathgames.com> (the "Subject Domain"). *Id.*  Plaintiff alleges that Mr. Gargiulo is an individual and resident of the State of Georgia. Complaint, ¶ 3.  On June 14, 2014, Plaintiff caused a copy of the Complaint to be served on Mr. Gargiulo in the State of Georgia. *See* (Doc. 5).

In the Complaint, Plaintiff alleges to be a California "limited liability corporation" [sic], with an office located in the State of New York.  Plaintiff's Complaint posits, without any factual support, that "Coolmathgames.com is a d.b.a. of Defendants Michael Gargiulo and John Doe." *Id.* at ¶ 2.  The Complaint fails to identify what type of entity "Coolmathgames.com" is alleged to be.  In the Complaint, Plaintiff made only one allegation as to the jurisdiction over Mr. Gargiulo, as follows:

> 6. Upon information and belief, the conduct of Defendants complained of herein has occurred in various locales, including in this judicial district.

---

[1] The facts set forth herein are based on the Complaint, documents attached to the complaint as an exhibit, matters of which judicial notice may be taken, and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

3

Plaintiff further alleges that venue is proper in this district "as it is the location of a substantial part of the events or omissions giving rise to the asserted claim." Complaint, ¶ 7.  However, the balance of Plaintiff's allegations do not address any other contact by Mr. Gargiulo, as an individual, with the State of New York. Plaintiff's allegations in support of its trademark claims against all defendants consist solely of the following statement:

> 14.  On or about February 8, 2014, Defendants, in an attempt to trade off of the success and goodwill of Plaintiff's trademarks and trade dress, began operating the website www.coolmathgames.com which offers math and science related games. The www.coolmathgames.com website exclusively uses the colors green, blue, yellow, red and purple on a dark background in an attempt to confuse consumers into believing that Defendants are somehow associated with Plaintiff.

The Complaint in each case lumps all Defendants together when describing the purportedly infringing conduct.  The Complaint charges Mr. Gargiulo by implication with being the owner of the Subject Web site, presumably in an attempt to hold Mr. Gargiulo *individually* responsible, however, there is no factual support for Plaintiff's contention.  Indeed, Mr. Gargiulo neither owns the Subject Domain nor operates the disputed Web site in his individual capacity. The entity that licensed the right to use the Subject Domain and operate the Subject Web site is A Aron LLC, which is not a named party in this action. Gargiulo Aff., ¶¶ 2,21.

Plaintiff's Application asserts that the, "contact address listed on the website" listed "DomainsByProxy c/o Michael Gargiulo;" however, the contact address on the website at the Subject Domain never identified Mr. Gargiulo. *See* Affirmation of Justin Mercer ("Mercer Aff.) at Exhibit B.  Mr. Gargiulo is not the owner, registrant, or licensee of the Subject Domain. See Mercer Aff. at Exhibit A.  Nor would being a contact person be enough to establish that Mr. Gargiulo was acting on his own behalf.  Indeed, the Complaint fails to allege that Mr. Gargiulo

4

engaged in *any* activity in his individual capacity, as opposed to acting on behalf of the entity that operates the disputed website.

### The Alleged Cool Math Marks

Plaintiff alleges that it is the owner of a trademark for the phrase "coolmath" in International Class 41 for, "Computer services, namely, providing on-line website in the field of mathematics and science education; entertainment services, namely, providing on-line computer games in the field of mathematics and science enducation [sic]." Complaint, ¶ 8.  Notably, the descriptive phrase "coolmath-games" is not registered with the United States Patent and Trademark Office ("USPTO"). Mercer Aff., ¶ 5.  On June 10, 2014, three days before it filed this complaint, Plaintiff filed an application with the USPTO for the word mark "coolmath-games." Complaint, ¶ 11.

Plaintiff's only allegation in the Complaint as to its use of the descriptive phrase "cool math games" is via operation of a website at www.coolmath-games.com which allows users to play cool math games. *See* Complaint, ¶ 13.  The Complaint fails to allege any facts from which the Court could make a finding of secondary meaning, relative to Plaintiff.  The Complaint likewise fails to allege inherent distinctiveness or secondary meaning related to its claimed trade dress in the common colors "green, blue, yellow, red, and purple"—virtually every primary color.  Plaintiff simply asserts an entitlement to trade dress protection for an entire rainbow of colors, without so much as an allegation as to the distinctiveness and/or exclusive association of such colors with Plaintiff.

## ARGUMENT

### I. Legal Standard for Preliminary Injunction

Preliminary injunctions are extraordinary remedies available only on a clear showing of entitlement to the relief requested.  A plaintiff seeking a preliminary injunction must show (1) a

likelihood of success on the merits; (2) that "he is likely to suffer irreparable injury in the absence of an injunction"; (3) that "remedies at law, such as monetary damages, are inadequate to compensate for that injury"; (4) that the balance of hardships tips in his favor; and (5) that "the 'public interest would not be disserved' by the issuance of a preliminary injunction." Pretty Girl, Inc. v. Pretty Girl Fashions, Inc., 778 F. Supp. 2d 261, 265 (E.D.N.Y. 2011) (citing *Salinger,* 607 F.3d at 80[cite]); see also *eBay,* 547 U.S. at 391 [cite].

As with any action, the Court cannot reach the merits of a plaintiff's claims until it has personal jurisdiction over the defendant himself. *See, e.g., In re Rationis Enters., Inc. of Panama,* 261 F.3d 264, 267–68 (2d Cir. 2001) (treating personal jurisdiction as a threshold determination that precedes adjudication of the merits); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). Federal courts are courts of limited jurisdiction. When a defendant has raised a jurisdictional challenge, the plaintiff bears the burden of producing sufficient facts to establish that the exercise of personal jurisdiction is proper. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir.1998). A plaintiff must demonstrate jurisdiction over each defendant individually. *See Calder v. Jones*, 465 U.S. 783 (1984). District courts may exercise personal jurisdiction over out of state residents to the extent permitted by the long arm statute of the forum state. *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). In the Second Circuit, courts must "first consider whether the requirements of the [New York] statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due

Process Clause. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012).

New York has several jurisdiction statues under the Civil Practice Law and Rules ("CPLR"), the lot of which fall short of the full extent of the Due Process Clause of the United States Constitution. *Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 71, 476 N.Y.S.2d 64, 464 N.E.2d 432 (1984) ("in setting forth certain categories of bases for long-arm jurisdiction, [the New York long-arm statute] does not go as far as is constitutionally permissible"). Although the Complaint is silent as to which statute it is proceeding under, CPLR 302(a)(1) and (3) appear to be the applicable statues. *See* CPLR § 302(a).

CPLR 302(a) provides that courts in New York may exercise jurisdiction over an out-of-state defendant when the nonresident, "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state" or "(3) commits a tortious act without the state causing injury to a person or property within the state . . . if he . . . [as to general jurisdiction] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or [as to specific jurisdiction] (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.* Thus, CPLR 302 authorizes a court to exercise personal jurisdiction over nonresidents only when the prescribed "minimum contacts" with the state are established. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A website that merely provides information that is accessed by individuals in New York does not provide the minimum contact requisite for an exercise of personal jurisdiction. *See, e.g., ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F.Supp.2d 81, 86 (E.D.N .Y.2006) ("Internet websites

that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."); *See e.g. Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996) (no personal jurisdiction under New York long-arm statute as to passive Website).

**A.      Plaintiff Has Not Met Its Burden to Establish Personal Jurisdiction**

   i.   Plaintiff fails to allege any facts to support general jurisdiction in New York.

Plaintiff fails to allege that Mr. Gargiulo has ever transacted, engaged in regularly, does, or solicits business in New York. Mr. Gargiulo is an individual and a resident of the State of Georgia. Plaintiff's scant jurisdictional allegations are based on the false premise that "Coolmathgames.com" is the assumed name of Mr. Gargiulo. Indeed, "Coolmathgames.com" is a domain name owned by Vertical Axis (Mercer Aff. at Ex. A), and licensed by A Aron LLC (Gargiulo Aff., ¶ 21). Mr. Gargiulo is the President and managing member of A Aron LLC. Gargiulo Aff., ¶ 2. Neither the Complaint nor the Application allege that Mr. Gargiulo owns or operates the disputed website in his individual capacity or elsewise, or pleads any facts sufficient to pierce the corporate veil. Simply put, the Complaint is wholly deficient of any facts that would support an exercise of general jurisdiction over Mr. Gargiulo as an individual.

Nor does Plaintiff satisfy the jurisdictional pleading standard for exercising jurisdiction over an entity. The Complaint fails to allege that any Defendant regularly engages in persistent or continual business in the State of New York.

   ii.   Plaintiff fails to allege facts to support specific jurisdiction in New York.

Plaintiff's conclusory allegations also fail to establish that Mr. Gargiulo, a non-resident Defendant, possessed the requisite "minimum contacts" with New York to support an exercise of specific jurisdiction. In the Second Circuit, a plaintiff must posit facts that, by virtue of his internet activities, "the defendant purposefully avail[ed him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and over which the New York legislature intended New York courts to have jurisdiction." *Best Van Lines,*

*Inc. v. Walker*, 490 F.3d 239, 253 (2d Cir. 2007) (internal quotation marks omitted). Additionally, "[m]ere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp.2d 1065, 1072 (C.D. Cal. May 20, 2004).

As a threshold matter, Plaintiff proffers no evidence that Mr. Gargiulo, in his individual capacity, is the owner of the disputed website. The balance of Plaintiff's conclusory allegations as to jurisdiction rely on the Defendants' relationship to the Cool Math Games website, but Plaintiff has not posited any evidence as to Mr. Gargiulo's relationship to same, to the alleged "Coolmathgames.com" entity, or any other contact with the State of New York. Again, Mr. Gargiulo is an individual, residing in the State of Georgia.

In the Application, Plaintiff's **counsel** states that it "sent a cease and desist letter to DomainsByProxy c/o Michael Gargiulo, 14747 N. Northsight Blvd. Suite 111, PMB 309, Scottsdale Arizona 85260 (<u>the contact address listed on the website</u>)." Application, at p. 5 (emphasis added). In reality, Mr. Gargiulo's name was never listed as the contact for the disputed website, and never appeared in the whois records for the Subject Domain. See Mercer Aff. at Exhibits A and B. Plaintiffs' unfounded and cursory allegations that Mr. Gargiulo individually engaged in any infringing activity lack support in the documentary evidence attached to the Complaint.

To the extent that Plaintiff claims that the disputed website infringed upon its trademarks, there is no evidence in the record that Mr. Gargiulo is responsible, in his individual capacity, for any content posted on the website, such that he is subject to jurisdiction in this forum. Through the allegations in its Complaint and its papers previously filed in the instant proceeding, Plaintiff improperly attempts to lump the actions of "Coolmathgames.com" – a domain name – and Mr. Gargiulo together. Plaintiff cannot avoid its burden of establishing jurisdiction over Mr. Gargiulo by imputing the actions of a domain name on to him – nor is it at all clear that a domain name can be sued over the content posted on the Web site associated with that domain name. In

so doing, Plaintiff ignores the fiduciary shield doctrine and its obligation to assert jurisdictional facts individually. *See Wolf Designs, Inc.*, 322 F. Supp.2d at 1072. Defendant Gargiulo has stated unequivocally that he has never individually (or in any other capacity) conducted business activities in New York. Nor does Plaintiff plead facts sufficient to attach jurisdiction to a Defendant based on the operation of a passive Web site.

Accordingly, any exercise of jurisdiction over Mr. Gargiulo would be constitutionally unreasonable. Thus, Defendant respectfully submits that the Court should deny the Application.

**B. Plaintiff Has Not Made A Clear Showing That It Is Entitled to a Preliminary Injunction**

<u>i. Likelihood of Success on the Merits</u>

**a. Legal Standard**

In order to state a trademark infringement claim or an unfair competition claim, a plaintiff must posit factual allegations that it owns a distinctive, protectable mark. "The central consideration in assessing a mark's protectability, namely its degree of distinctiveness, is also a factor in determining likelihood of confusion." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 115 (2d Cir.2006) (citing *Playtex Prods. v. GeorgiaPac. Corp.,* 390 F.3d 158, 161 (2d Cir.2004)). "To be valid and protectable, a mark must be capable of distinguishing the products it marks from those of others." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir.1999). Thus, the first step in analyzing the merits of a trademark claim is to determine whether plaintiff's trademark is entitled to protection. *See Strange Music v. Strange Music,* 326 F.Supp.2d 481, 486 (S.D.N.Y.2004) (citation omitted).

The classic test for determining the distinctiveness of a trademark was set out in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Under the *Abercrombie* test, marks are classified as either: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Abercrombie*, 537 F.2d at 9. If a term is commonly descriptive or

generic for a genus or class of thing it simply may not take on trademark status regardless of the amount of a party's advertising, promotion and use of the term.  As explained in *Abercrombie*, "This means that even proof of secondary meaning, by virtue of which some 'merely descriptive' marks may be registered, cannot transform a generic term into a subject for trademark. … [N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." 537 F.2d at 9.

Plaintiff must also allege that the allegedly improper conduct will result in a "likelihood of confusion." *See* 15 U.S.C. §§ 1114 and 1125; *see Savin Corp. v. Savin Group*, 391 F. 3d 439, 456 (2d Cir. 2004) ("[T]he crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."). Even if Plaintiff's complaint somehow cleared the hurdle of showing a likelihood of confusion, however, the doctrine of fair use bars relief under the trademark infringement claims. *See* 15 U.S.C. § 1115(b)(4) "([T]he right to use the registered mark . . . shall be subject to the following defenses or defects: That the use of the name, term, or device charged to be an infringement is a use . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party. . ."); *see also H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023-24 (2d Cir. 1989); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) (applying genuine goods and nominative fair use doctrines to Internet domain names in denying summary judgment); *Hensley Mfg. v. ProPride, Inc.*, 579

F.3d 603, 611-12 (6th Cir. 2009) (affirming motion to dismiss trademark infringement action based upon the affirmative defense of fair use).

In order to establish a cause of action for trade dress infringement, a plaintiff must establish that (a) the design is non-functional; (b) the design is inherently distinctive or distinctive by virtue of having acquired secondary meaning; and (c) there is a likelihood of confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *see Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115–16 (2d Cir. 2001). Trade dress is defined as the total image or overall design or appearance of a product or its packaging. *Two Pesos*, 505 U.S. at 762; *see Rose Art Industries, Inc. v. Raymond Geddes & Co.*, 31 F. Supp.2d 367 (D.N.J. 1998). A plaintiff must also offer "a precise expression of the character and scope of the claimed trade dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997).

### b. "Cool math games" is generic and widely used on the Internet

The Complaint fails to allege sufficient facts to establish that Plaintiff has a protectable mark in the phrase "coolmath-games," or "cool math games." The terms "cool math games" is so widely used on the Internet in connection with Web sites featuring a certain type of flash game, to wit, fun or cool math games, as to be highly descriptive – if not generic – and weak, if protectable at all. The Complaint fails to allege any facts from which the Court could make a finding of secondary meaning, relative to Plaintiff. As descriptive marks are entitled to limited protection, and generic marks cannot be protected at all, the Court should deny the preliminary injunction, pending further factual determination into what type of mark Plaintiff has, if any.

When the Disputed Site refers to, "cool math games," it describes math games that are cool. Such use of the term is descriptive fair use. *Tabari*, 610 F.3d at 1175; *Tiffany (NJ) Inc. v. eBay* Inc., 600 F.3d 93, 102 (2d Cir. 2010). As the Second Circuit has held, "[T]he mere fact that someone owns a mark that contains a particular word or phrase does not grant the holder the

exclusive right to use that word or phrase commercially." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

The Cool Math Games website features flash games, a generic term for web browser-based graphic games played using the Flash or Java plugin on a webpage. *See* Gargiulo Aff., ¶ 25.  The site must use the terms cool math games to describe the products it specializes in offering, namely, cool math games.  Moreover, thousands of websites, offer math-based flash games and use the terms "cool math" and "cool math games." *Id.* at ¶ 26.  By way of example, a cursory web search for the terms "cool," "math" and "games" brings up the following websites, which use cool math games to describe their offerings of these flash games:

- www.abc-cool-math-games.sharewarecentral.com
- www.bestcoolmathgames.wordpress.com
- www.gamecoolmath.com
- www.cool-addicting-math-games.com
- www.dr-mikes-math-games-for-kids.com/cool-math-games.html
- www.coolmathforkids.info
- www.coolmathgames.seoconnect.net
- www.cool-mathgames.us
- www.coolmath-coolmath.com
- www.cool-math-game.en.softonic.com/download
- www.coolmathgames.biz/games/Math_Shooter.html
- www.amazon.com/Miss-Brains-Cool-Math-Games/dp/0985572507
- www.pinterest.com/gamesmathcool/play-online-cool-math-games/
- www.coolmathgamesrun.net/run-2/

13

*See* Mercer Aff. at Exhibit C.

This is but a small sample of the thousands of websites that use the same terms "cool," "math," and "games" to describe math games that are cool. This widespread usage has rendered the term cool math games all-but-generic for the class of flash games targeting children. As such, at this stage, Plaintiff has not established and is not likely to prove that, even with a showing of secondary meaning, that it is entitled to exclusive use of that phrase. Given this common usage, at a minimum, the Court should permit the parties to conduct an inquiry into the genericism of the term cool math games, and the impact on the strength of Plaintiff's mark of wide spread third party use. Simply put, Plaintiff's claimed exclusivity to the term "cool math games" is more imagined than real. To permit Plaintiff to obtain a preliminary injunction against use of the words "cool math games" – when "cool math games" is how millions of people on the Internet refer to and search for flash animated math games – would be not only unwarranted, but patently unfair.

      At the time that Plaintiff registered the <CoolMath-Games.com> domain name, <CoolMathGames.com> was already taken by Vertical Axis, and was being used in connection with marketing and advertising cool math games. That did not stop Plaintiff from using the virtually identical <CoolMath-Games.com> in connection with "cool" math flash games. Yet, Plaintiff's failure to take action against Vertical Axis over its prior registration of the Subject Domain indicates that Plaintiff was aware of the thin ice on which its trademark claims were premised. Plaintiff's failure to act became the cornerstone on which A Aron LLC rested its belief that it was permissible to license the Subject Domain for use in connection with cool math games and on which it made the decision to invest in the Subject Domain. Gargiulo Aff., ¶ 24. Although there are admittedly some similarities between the parties' Web sites, those similarities

should not change the fact that cool math games is a generic phrase. Defendants are willing to change the look and feel of the CoolMathGames.com Web site, obviating any real need for the Court to grant a preliminary injunction, and allowing time for a proper factual inquiry into whether Plaintiff possesses enforceable trademark rights in the term "cool math games."

**c. Plaintiff has failed to allege protectable trade dress.**

While Plaintiff did not brief the issue in its Application nor provide any allegations as to the inherent or acquired distinctiveness of its purported trade dress, its Application seeks relief from, "using Plaintiff's trade dress." The Court should likewise deny this relief. As a threshold matter, Plaintiff has not identified its purportedly protectable trade dress with precision. *See Sherwood 48 Associates v. Sony Corp. of Am.,* 76 F. App'x 389, 391 (2d Cir. 2003)(affirming motion to dismiss Lanham Act claims on the pleadings). In the Complaint, the trade dress is described as: "[each] of the websites uses the colors green, blue, yellow, red and purple on a dark background as their trade dress to give the websites a distinctive look and feel." Complaint, ¶ 13. Thus, on its face, the Complaint claims trade dress rights in virtually every primary color without any factual allegation as to the distinctiveness and/or exclusive association of such colors with Plaintiff. This is *both* insufficient to meet its burden on an application for a preliminary injunction inadequate and grounds for outright dismissal on the pleadings. *See Sherwood 48*, 76 F. App'x at 391.

ii. Irreparable Harm

As the Second Circuit has held, "[a]fter *eBay,* however, courts must not simply presume irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010)(citing *eBay,* 547 U.S. at 393, 126 S.Ct. 1837). "Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Id.* Irreparable injury is one that

cannot be remedied through monetary damages. *Grout Shield Distributors, LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 403 (E.D.N.Y. 2011) ("Where money damages are adequate compensation a preliminary injunction should not issue.")

Absent a protectable mark, plaintiff cannot amass any goodwill that could be harmed. Moreover, even with an allegedly protectable mark, a plaintiff's delay in bringing suit "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Grout Shield Distributors, LLC*, 824 F. Supp. 2d at 403 (citing *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)); *Richard A. Leslie Co., Inc. v. Birdie, LLC,* No. 07 Civ. 5933(LAK), 2007 WL 4245847, at *2 (S.D.N.Y. Nov. 26, 2007) ("The period from April 10 through June 8 may be excused ... on the basis that the parties appear to have been engaged in discussions with a view to resolving the matter. The three month period from June 8 through September 18 cannot. It is sufficiently long, in and of itself, to warrant denial of preliminary relief...."); *Gidatex, S.R.L. v. Campaniello Imports, Ltd.,* 13 F.Supp.2d 417, 419 (S.D.N.Y.1998) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.").

In its Application, Plaintiff's **counsel** argues "Defendants' actions are causing Plaintiff irreparable injury by deceiving customers, and ultimately <u>depriving it of sales</u>." Notably, this allegation does not appear in the Complaint. Moreover, lost sales can be redressed via monetary damages.

Further, Plaintiff unreasonably delayed in bringing this action and motion, which undercuts the argument for irreparable injury. As stated above, the Subject Domain was registered in 2001, well before Plaintiff registered the <CoolMath-Games.com> domain name and before Plaintiff owned a trademark registration for any of its alleged marks. It is highly

likely that Plaintiff selected <CoolMath-Games.com> because the registration for <coolmathgames.com>, i.e. the Subject Domain, had already been registered. The Subject Domain has been in use in connection with the marketing and promotion of math-oriented flash games <u>for over 13 years</u>.  Gargiulo Aff., ¶ 22.  Similarly, it is unlikely that Plaintiff was unaware of the Subject Domain for that same amount of time.  Plaintiff failed to take any action with respect to the Subject Domain for over 13 years.  Moreover, the Complaint alleges that "on or about February 8, 2014," Defendants were operating the Cool Math Games website.  However, Plaintiff did not file this action until mid-June, over <u>four months later</u>.

In *Grout Shield*, the United States District Court for the Eastern District of New York denied an application for a preliminary injunction waited approximately five months before moving for a preliminary injunction. 824 F. Supp. 2d 389.  In the instant matter, Plaintiff waited over 13 years before taking action after the Subject Domain was registered, and over four months after it alleged Defendants began operating the disputed website.  Moreover, the operator of the site, A Aron, is willing to change the look and feel of the site so as to minimize any alleged association between the Cool Math Games website and Plaintiff's <CoolMath-Games.com>.

As plaintiff has not shown a likelihood of success on the merits and waited too long to bring this motion, Plaintiff has failed to demonstrate that it would suffer irreparable harm (and not simply monetary damages for lost sales) if its motion for a preliminary injunction is not granted.

<u>iii. Balance of Hardships</u>

As stated above, Plaintiff has not shown that it has a protectable mark in the terms "cool math games" or that it will suffer irreparable harm.  Moreover, a third party, A Aron LLC, has invested time and money developing a resource for fun or cool math games at the Disputed Site via the licensing agreement it has with Vertical Axis.  Requiring A Aron LLC or Defendants to

17

re-brand the Dispute Site could substantially harm A Aron's relationship with Vertical Axis and deprive the public of a legitimate, descriptive use of a phrase to describe this class of flash games. *See* Gargiulo Aff., ¶¶ 21-24.  Even if plaintiff could demonstrate sufficiently serious questions going to the merits of its claims, plaintiff has failed to demonstrate that the balance of hardships weigh decidedly in plaintiff's favor. *Grout Shield*, 824 F. Supp. 2d at 419. Therefore the balance of hardships tips in favor of Defendants.

iv. Public Interest

The public would not be served by granting plaintiff exclusivity of the generic and descriptive words "cool math games," to refer to fun or cool math games.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court deny Plaintiff's application for a preliminary injunction, as it has failed to assert facts to support an exercise of personal jurisdiction over Defendant Gargiulo, lacks a protectable mark or trade dress such that it is unlikely to succeed on the merits of its claim, and has unreasonably delayed in bringing this action and motion.

DATED this 23rd day of June 2014,

Respectfully Submitted:
LEWIS & LIN, LLC

By:     */s/ Justin Mercer*
        Brett E. Lewis, Esq.
        Justin Mercer, Esq.
        45 Main Street, Suite 608
        Brooklyn, NY 11201
        Tel: (718) 243-9323
        Fax: (718) 243-9326
        Email: brett@iLawco.com
               justin@iLawco.com

*Attorneys for Defendant*